UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MANUEL L. BURNLEY, JR.,

                Plaintiff,

and

STATE OF WISCONSIN DEPARTMENT
OF JUSTICE, OFFICE OF CRIME VICTIM
COMPENSATION SERVICES, and
STATE OF WISCONSIN DEPARTMENT OF
HEALTH SERVICES,

                Involuntary Plaintiffs,

                                                                         Case No. 19-CV-364

    vs.

VILLAGE OF BROWN DEER,
and DEVON M. KRAEMER,

                Defendants.

---

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

---

Defendants, by their attorneys, Gunta Law Offices, S.C., submit this Reply Memorandum in Support of their Motion for Summary Judgment.

### PREFACE

Failing to establish that Officer Kramer's use of force on March 14, 2016 was either unreasonable or unjustified, Plaintiff presents a misleading version of the facts which wrongly suggests the existence of material factual disputes. Plaintiff's Opposition Brief contains a litany of self-serving statements, out-of-context testimony, and conclusory statements speculating about

1

Officer Kraemer's subjective perception on the scene and immediately leading up to the use of force. Plaintiff's recitation of the factual record is not only contrary to the evidence, but completely disregards the testimony of the Officers on scene, the most relevant being Officer Kraemer's, and Plaintiff's admissions that the Officers could have thought that Plaintiff was resisting their attempts to arrest him. See Dkt. 48, pp. 23-24, Plaintiffs PSAF 20-22.

Not only does Plaintiff's skewed recitation of the testimony fall short of establishing liability against Officer Kramer, Plaintiff's legal argument either intentionally misrepresents or misunderstands well-settled precedent relating to the Fourth Amendment's reasonableness standard governing excessive force claims.

Although there may be disagreement on the catalyst for the events or Officer Kraemer's subjective intent, in the context of the Constitutional framework alleged, there are no disputes of material fact. Plaintiff fails both legally and factually to establish or create an issue of material fact with regard to any of his claims. See Drake v. Minn. Mining & Mfg. Co., 134 F.3d 878, 887 (7th Cir. 1998) ([c]onclusory allegations and unsubstantiated assertions, without more, cannot overcome summary judgment). Therefore, dismissal is warranted.

## DISCUSSION

**I.** **Officer Kraemer's Use of Force Did Not Violate the Fourth Amendment.**

    **A.** **Clarifying the Fourth Amendment's Objective-Reasonableness Test Relating to Use of Force Claims.**

To understand the deficiency of Plaintiff's position regarding excessive force, his argument must be put in the context of the actual controversy that forms the basis of this lawsuit. Claims that an officer has used more force than necessary in effectuating a seizure are governed by the leading Supreme Court decision Graham v. Connor, which held that a claim that an officer has used

2

excessive-force is governed by the Fourth Amendment's "objective reasonableness" standard – meaning reasonable at its inception, in the matter it was effected, and in its duration. Graham, 490 U.S. at 396-97. The relevant question for this Court is: Based on the totality of the circumstances that confronted Officer Kraemer–and not in hindsight–was Officer Kraemer's use of force against the Plaintiff reasonable? Graham v. Connor, 490 U.S. 386, 396 (1989). In answering this question, Graham warns that courts must remain cognizant of "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 397. This inquiry is not based on Plaintiff's subjective perception or intent of his actions, but relies on the Officers' perception based on the information known to them on the scene and in accordance with their training.

The calculus of the reasonable police officer must embody allowance for the fact that police officers are often forced to make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation. Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (citing Graham, 490 U.S. 386 at 396). Thus, in answering this question, the Court must judge the force from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Id.

Since the Graham holding, courts have continued to adhere to the warning to not second-guess "a police officer's assessment, made on the scene, of the danger presented by a particular situation." Ryburn v. Huff, 565 U.S. 469, 477 (2012); Plakas v. Drinski, 19 F.3d 1143, 1149 (7th Cir. 1994) (citing Graham, 490 U.S.386, at 396–97); Williams v. Indiana State Police Dep't., 797 F.3d 468, 473 (7th Cir. 2015) ("In assessing such a claim, however, we must remain cognizant of the

3

incredibly difficult task facing law enforcement officers called to address fluid situations such as those presented in these cases."). Moreover, Courts "give considerable leeway to law enforcement officers' assessments regarding the degree of force appropriate in dangerous situations." Abbott v. Sangamon Cty., Ill., 705 F.3d 706, 724-25 (7th Cir. 2013); see Baird v. Renbarger, 576 F.3d 340, 344 (7th Cir. 2009).

Additionally, when assessing whether a police shooting is reasonable the totality of the circumstances is not "limited to the precise moment when [the officer] discharged his weapon" [the court] must assess "all of the events that occurred around the time of the shooting." Deering v. Reich, 183 F.3d 645, 649-652 (7th Cir. 1999). The actions of the police officer that led to the shooting are relevant. Estate of Starks v. Enyart, 5 F.3d 230, 233–34 (7th Cir.1993). The following provides the Court with a the relevant timeline of events that lead up to and justified the use of force:

The Officers were summoned to the bus by a bus driver who was in obvious distress about a disruptive customer, Plaintiff. (DPFF 17-18 and Plaintiff's Response) When Plaintiff approached Officer Kraemer he was extremely loud, used profane language, and was disproportionately upset over a $3.00 misunderstanding. (DPFF 26, 30, 34, 35, Plaintiff's Response, and Video) Plaintiff chose to remain on the bus and receive a $600+ ticket over leaving the bus voluntarily. (DPFF 39-40) The Officers had to utilize force to get him off the bus. (DPFF 42, Plaintiff's Response and Video; PSAF 26 and Response) Once off the bus, Officers were unable to handcuff Plaintiff, interpreting his physical behaviors as being resistive. (DPFF 43, 45-46, Responses and Video) The bus driver, who is not a party to this case, testified under oath that the Plaintiff was actively resisting the Officers' attempts to handcuff him and place him under arrest, and felt he was a threat to her and

4

to others in the area. (PSAF 28-29, 31 and Responses) After Officer Leeman took Plaintiff to the ground and Officer Kraemer delivered knee strikes, the Officers were still unable to apply handcuffs to the Plaintiff. (DPFF 49-50) Plaintiff does not deny that right before or after he landed on the ground he may have placed his hand in his hoodie pocket, as Officer Krueger observed. (PSAF 33 and Response; DPFF 51, Response and Reply) Ultimately, Officer Kraemer lost sight of her partner on the opposite side of the Plaintiff, and feared the Plaintiff may have access to a weapon at his waistband. (DPFF 69-72, Responses and Replies) It was Officer Kraemer's subjective observation that Plaintiff, who was well over twice her size, strong, uncooperative, and resistive, could access a weapon, and she feared for hers and Officer Leeman's safety. (DPFF 74-75, Responses and Replies) Despite her call for backup, Officer Kraemer did not hear any squads responding. (DPFF 77, Response and Reply) Officer Kraemer believed she had no other choice. Officer Leeman had essentially disappeared from Officer Kraemer's view, on the other side of the Plaintiff. Officer Kraemer didn't see Officer Leeman defending himself, which caused her great concern, based on Plaintiff's size and the fact that Officer Leeman wasn't actively defending himself and appeared to be lifeless. (DPFF 83, Response and Reply)

      **B.**     **Kraemer's Use of Force Was Justified Under the Factors Articulated in <u>Graham v. Connor</u>.**

In assessing whether an officer's use of force violates the Fourth Amendment, we ask whether the officer's actions are objectively reasonable in light of the information known at the time of an arrest. <u>Miller v. Gonzalez</u>, 761 F.3d 822, 828–29 (7th Cir. 2014) (citing <u>Phillips v. Cmty Ins. Corp.</u>, 678 F.3d 513, 519–20 (7th Cir. 2012)). This question turns on the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490
5

U.S. at 396. Although these factors may guide the reasonableness inquiry, all three are not required to demonstrate that a use of force was or was not justified.

Officer Kraemer's use of force was objectively reasonable under the circumstances of this case because the Plaintiff was actively resisting and posed an imminent safety threat. Even considering the lack of severity of the crime does not preclude a finding that Officer Kraemer's actions were objectively reasonable. The crime that Plaintiff committed prior to Officer Kraemer entering the bus was disorderly conduct. However, the Plaintiff's actions escalated the crime to felony battery on a police officer, resisting an officer, and disorderly conduct.

### 1. Plaintiff Posed an Immediate Threat to the Safety of Officers Kraemer and Leeman, and Others in the Immediate Vicinity.

The undisputed facts show that Plaintiff posed an immediate threat to the safety of Officers Kraemer and Leeman. Plaintiff's assertion that there is a reasonable view of the evidence to support a contrary conclusion fails, as explained above.

The fact that Plaintiff was later determined to be unarmed is irrelevant. Plaintiff seems to believe that Officer Kraemer had to have been certain that Plaintiff intended to harm her and/or Officer Leeman before she could lawfully shoot. That is not the case. As noted, police are entitled to err on the side of caution in uncertain or threatening situations. Johnson, 576 F.3d at 659. The Fourth and Ninth Circuits agree that omniscience and certitude are not required. See Elliott v. Leavitt, 99 F.3d 640, 644 (4th Cir. 1996) ("Officers need not be absolutely sure … of the nature of the threat or the suspect's intent to cause them harm—the Constitution does not require that certitude precede the act of self-protection."); Wilkinson v. Torres, 610 F.3d 546, 553 (9th Cir. 2010). To the extent that there is any question that Plaintiff intended to harm the Officers, the evidence discussed above certainly shows that a reasonable officer could have believed that Plaintiff could have been

6

intending to harm the Officers and, if he did, he would present an immediate *threat* (not certitude) of harm. That is sufficient.

### 2. The Plaintiff Was Actively Resisting Arrest.

There is no doubt that the Officers legally seized Plaintiff for disorderly conduct based on the information provided by the bus driver and based on Officer Kraemer's initial interaction with Plaintiff. There is also no doubt that Plaintiff refused to get off the bus and thus had to be forcibly removed. (PSAF 20) Plaintiff's resistive behaviors did not stop there. The bus driver witnessed the whole encounter and testified under oath that the Plaintiff resisted the officers from the moment they attempted to remove him from the bus and even after he was on the ground. (PSAF 25, 28, 29, 31, 38 and Responses) The Plaintiff remained a threat even after being removed from the bus. The bus driver was scared because she didn't know what the Plaintiff was going to do to her, and she didn't know if he was going to grab Officer Kraemer's gun or not. The bus driver thought he might grab Officer Kraemer's gun, because why else would he be fighting with the police. (Response to PSAF 36, Richards Test. pp. 68-69) The bus driver's sworn testimony supports Officer Kraemer's sworn testimony that she feared for her safety and the safety of her partner.

Plaintiff relies on Abbott v. Sangamon Cty., Ill., 705 F.3d 706, 732 (7th Cir. 2013) (citing Morfin v. City of E. Chicago, 349 F.3d 989, 1005 (7th Cir. 2003) to suggest that Officer Kraemer's use of force was objectively unreasonable because Plaintiff was not resisting. (Dkt. 48, pp. 34-35) Although it may be true that a use of deadly or significant force on a subdued or non-resistant suspect would be unreasonable, that is not the case here. Plaintiff was not a "subdued suspect" nor can his actions be characterized as compliant.

Plaintiff's argument that he was not actively resisting when Officers Kraemer and Leeman

forcibly removed him from the bus, ignores the video evidence in this case. (Dkt. 48, p. 34) By Plaintiff's own admission he had to be forcibly removed, therefore he did resist being removed from the bus.

Bus driver Richards confirmed in her trial testimony that the Plaintiff was resisting the Officers' efforts to handcuff and restrain him. (Responses to PSAF 25, 28, 29, 31, 36, 38)

### C. Additional Considerations.

Beyond speculation over Officer Kraemer's intent, Plaintiff provides no analysis to dispute the evidence that Officer Kraemer's belief was objectively reasonable. Plaintiff's speculation, hunches and intuition cannot defeat Defendants' properly raised summary judgment arguments. Payne v. Pauley, 337 F.3d 767, 772 (7th Cir. 2003). Nor can Plaintiff thwart summary judgment by speculating as to Officer Kraemer's state of mind. Id; Graham, 490 U.S. at 397 (an officer's "intent and underlying motivation are irrelevant"). "If there are sufficient undisputed material facts to establish that the officer acted reasonably under the circumstances, then the court must resolve the issue as a matter of law rather than allow a jury to 'second-guess' the officer's actions." Dawson v. Brown, 803 F.3d 829, 833 (7th Cir. 2015). The record establishes that Officer Kraemer's actions were reasonable, and that her decision to use force was in direct response to Plaintiff's actions and the threat he posed, and her fear for her safety and that of her partner. In this case, the only person who can speak to what Officer Kraemer reasonably perceived on the scene is Officer Kraemer. Based on the above, it is undisputed that Officer Kraemer reasonably perceived that Plaintiff posed a safety threat and acted under that reasonable perception.

## II. The Authority Cited by Plaintiff Does Not Preclude Officer Kraemer's Entitlement to Qualified Immunity.

Qualified immunity, in effect, affords enhanced deference to officers' on-scene judgments about the level of necessary force. Abbott v. Sangamon Cty., Ill., 705 F.3d 706, 725 (7th Cir. 2013) (citing Saucier v. Katz, 533 U.S. 194 at 204-05 (2001)). Qualified immunity is granted if a reasonable officer in the same circumstances could have believed that deadly force was necessary to protect himself or others from death or serious harm. Ellis v. Wynalda, 999 F.2d 243, 246 (7th Cir. 1993). The plaintiff has the burden of defeating the qualified-immunity defense once it is raised. Archer v. Chisholm, 870 F.3d 603, 613 (7th Cir. 2017) (citing Rabin v. Flynn, 725 F.3d 628, 632 (7th Cir. 2013)).

> To do so, the plaintiff must show (1) that the defendant violated a constitutional right, when construing the facts in the light most favorable to the plaintiff, and (2) that the right was clearly established at the time of the alleged violation, such that it would have been clear to a reasonable actor that her conduct was unlawful.

Archer, 870 F.3d at 613 (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009) ). "A failure to show either is fatal for the plaintiff's case." Id., citing Pearson, 555 U.S. at 236. With regard to excessive force cases, the Supreme Court also "has made clear that 'Garner and Graham do not by themselves create clearly established law outside an obvious case.'" Mason-Funk v. City of Neenah, 895 F.3d 504, 508 (7th Cir. 2018) (quoting Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018)).

Plaintiff argues that Officer Kraemer is not entitled to qualified immunity because, under his version of events, the force was so plainly excessive that she was on notice her conduct violated the Fourth Amendment. See Dkt. 48, pp. 32-36. Plaintiff has failed to present any case that establishes Officer Kraemer's use of force in a scenario such as this one is excessive. Instead, Plaintiff's argument rests essentially on the characterization of his actions as passive rather than actively

9

resistive. Not only is this a mischaracterization of the factual record, the argument ignores the totality of the circumstances facing Officer Kraemer.

When on the ground, the Plaintiff pinned his arm underneath him in the direction of his waistband, Officer Kraemer's initial fear was that he was accessing a weapon. She believed the Plaintiff was paying too much attention to his waistband, and Officer Kraemer believed he had to have something on him or he wouldn't be reaching for his waistband in a ground fight. Officer Kraemer perceived it as a direct movement to retrieve a weapon to harm Officer Leeman and herself. She feared for her safety and for Officer Leeman's safety as well. Officer Leeman also believed the Plaintiff could have accessed Leeman's weapon. Officer Leeman feared for his life. (DPFF 73, Response and Reply)

Officer Kraemer perceived the totality of the circumstances as reason to fear for her and Officer Leeman's safety. The Plaintiff was not showing a willingness to comply, had no interest in accepting any reasonable choices provided to him. Officer Kraemer had concerns about the Plaintiff's mental state, signs that he would possess super-human strength, meaning he is so strong and he is so overpowering and he may not have any pain compliance. (DPFF 74, Response and Reply)

Officer Kraemer believed the Plaintiff portrayed assaultive behavior and resistance towards the officers, and was in control of the officers by the end of the fight. Officer Kraemer believed she did not ever have control over the Plaintiff at any point in time, which she believed added direness to the situation. Based on Officer Kraemer's training she knew that if she could not control the Plaintiff's hands and could not see them and what they're accessing on the body, it posed a life-threatening situation to officers. When an officer can't see hands it means that there is a threat to the

10

Case 2:19-cv-00364-JPS   Filed 12/16/19   Page 10 of 16   Document 53

officer. The hands are what can access weapons on a person. (DPFF 75, Response and Reply)

Officer Leeman had essentially disappeared from Officer Kraemer's view, on the other side of the Plaintiff. Officer Kraemer didn't see Officer Leeman defending himself, which caused her great concern, based on the Plaintiff's size and resistence, and the fact that Officer Leeman wasn't actively defending himself and appeared to be lifeless. (DPFF 83, Response and Reply) Because Officer Leeman wasn't up kneeling or in a position of advantage and Officer Kraemer couldn't see Officer Leeman, Officer Kraemer believed that Officer Leeman was incapacitated or being incapacitated by the Plaintiff, and she had deep concern for her partner's life. Officer Kraemer felt alone, and didn't feel Officer Leeman's assistance in the altercation. (DPFF 84, Response and Reply)

Plaintiff cites to a string of cases that, in their view provided Officer Kraemer sufficient notice that her decision to use force against Plaintiff was unreasonable. See Dkt. 48, pp. 34-35, citing Morfin v. City of E. Chicago, 349 F.3d 989, 1005 (7th Cir. 2003); Payne v. Pauley, 337 F.3d 767, 779 (7th Cir. 2003); Miller v. Gonzalez, 761 F.3d 822, 829 (7th Cir. 2014). See Dkt. 48, pp. 34-35. These cases are not sufficiently analogous to govern the facts and circumstances that confronted Officer Kraemer. The cases cited by Plaintiff involve police officers using force against non-resistant, docile, cooperative individuals. See Id. While it may be true that the law in this Circuit relating to uses of force against compliant individuals could be unreasonable, that is not the case here. To the contrary, the case law establishes that "[i]t is reasonable for a law enforcement officer to use deadly force if an objectively reasonable officer in the same circumstances would conclude that the suspect posed a threat of death or serious physical injury to the officer or to others." Estate of Williams v. Ind. State Police Dep't., 797 F.3d 468, 473 (7th Cir. 2015) (quoting Marion v. City of Corydon, Ind., 559 F.3d 700, 705 (7th Cir. 2009)). The evidence in the record, specifically the

11

video evidence and testimony from both Officers on scene, the bus driver and Plaintiff, establishes that he was non-complaint. Plaintiff concedes that he actively resisted being removed from the bus, which required Officers Kraemer and Leeman to forcibly removed him. (PSAF ¶¶ 20-22) By Plaintiff's own admission he had to be forcibly removed, therefore he was resistive. (Id.)

More analogous to the facts of this case is Johnson v. Scott, 576 F.3d 658, 659 (7th Cir. 2009), in which a shooting suspect fled from police until he was cornered in a residential yard. Johnson, 576 F.3d at 659. Literally moments after the suspect turned and offered to surrender, he was bitten by the pursuing officer's dog and the officer struck him several times until he was handcuffed. Id. at 659–60. In affirming the district court's grant of summary judgment on Johnson's excessive-force claim, the Seventh Circuit ruled that, while officers may not continue to use force against a subdued suspect, Johnson was not yet known to be subdued when his pursuers applied force. Id. at 660. The critical fact in Johnson was that the officer "had no idea how Johnson was going to behave once he was cornered." Id. at 660. Like the arresting officer in Johnson, Plaintiff was actively resisting Officers Kraemer and Leeman's efforts to handcuff him. Plaintiff was fighting with the Officers, and his behavior escalated rapidly to an all out ground fight. Officer Kraemer had no idea how Plaintiff was going to act, and Plaintiff had already demonstrated he had no intention of co-operating.

Plaintiff argues in the alternative that even if the Court concludes that none of the decisions described above are sufficiently analogous, qualified immunity should be denied because Officer Kraemer's use of force was plainly "incompetent." See Dkt. 48, p. 36. The conclusory statement that Officer Kraemer's actions were "plainly incompetent" without any legal analysis is insufficient to preclude qualified immunity. See Drake, 134 F.3d at 887 ("[c]onclusory allegations and

12

unsubstantiated assertions, without more, cannot overcome summary judgment"). Moreover, the authority cited by Plaintiff, which solely consists of district court decisions on summary judgment motions is easily distinguishable. See Dkt. 48, pp. 35-36, citing J.M. v. City of Milwaukee, 249 F. Supp. 3d 920, 943 (E.D. Wis. 2017) (finding that Officer Manney's use of deadly force "could also be considered so plainly excessive that, as an objective matter, Manney would have been on notice that he was violating the Fourth Amendment."); See Dkt. 48, pp. 35-36, citing Estate of Thurman v. City of Milwaukee, 197 F. Supp. 2d 1141, 1144 (E.D. Wis. 2002) (denying summary judgment based on qualified immunity where officer's use of deadly force could be considered "plainly incompetent.")

In J.M. v. City of Milwaukee the factual record on summary judgment established that the officer's use of deadly force was unreasonable because at the time he shot the suspect, the two were ten feet apart and the suspect was not advancing toward him or threatening him, thus did not present an imminent danger of death or great bodily harm to anyone. Id. Further, after shooting the suspect once, the officer continued to shoot even while the suspect fell to the ground. The Court also found the officer who continued shooting even when the suspect was on the ground, acted unreasonably. This scenario is not akin to the circumstances facing Officer Kramer at the time she made the split-second decision to use force against the Plaintiff.

In Estate of Thurman v. City of Milwaukee, Miller, an off-duty police officer, confronted and chased a suspect (Thurman) who had attempted to steal his lawn mower. Id. at 1148. At one point during the chase, Miller caught up to Thurman, but Thurman was able to slip out of his shirt and get away. Id. at 1149. Miller found out where Thurman lived, got in his car, with a kid who lived in his neighborhood, and continued the pursuit at a high rate of speed. Id. at 1144. After catching up to

Thurman, Miller got out of the car, chased and ultimately shot and killed Thurman. Id. The district court denied summary judgment to Defendants, holding that Thurman did not pose an immediate danger to the safety of anyone because the offense that he had committed, stealing a lawn mower from a garage, did not involve violence or the threat of violence, he did not possess a weapon, and he was not driving a car. Id. at 1149. The Court further found that Miller created the high probability of physical harm by pursuing Thurman and failing to call 911 or request backup. Id. Moreover, the factual record on summary judgment contained deposition testimony and statements that Miller was pursuing Thurman to injure or kill him. Id. at 1148-1150. The district court also denied summary judgment on the basis of qualified immunity because Miller's actions were plainly incompetent, reasoning that "[a]s an objective matter, on August 3, 1996, a reasonable police officer would have known that it was unreasonable to precipitate a physical confrontation with a nonviolent and unarmed offender without calling for backup, without identifying himself as an officer, and with the intent to physically harm the offender." Id. 1150-1151. Thurman is neither factually nor legally applicable to the circumstances of this case. Officer Kraemer was not a rouge cop who pursued a dangerous situation, expressed intent to harm, and unreasonably responded to circumstances. Officer Kraemer was summoned to assist by a bus driver who was in distress and scared, and the Plaintiff escalated the situation.

### III. Plaintiff's State Law Claims Should be Dismissed

Plaintiff has agreed to voluntarily dismiss his claim for negligence and negligent infliction of emotional distress. (Dkt. 48, p. 36, fn.2) Plaintiff's remaining state law claims for Battery and Intentional Infliction of Emotional Distress must also be dismissed pursuant to discretionary act immunity under Wis. Stat. Sec. 893.80(4).

Plaintiff provides no legal analysis or argument to demonstrate why Officer Kraemer would not be afforded discretionary act immunity other than making the conclusory statement that her actions were "malicious." The exception for "malicious, willful and intentional conduct" is obviously a narrow one. Wilson v. City of Milwaukee, 138 F. Supp. 2d 1126, 1132–33 (E.D. Wis. 2001) (Giving broad scope to the exception would undermine the important public policy considerations that support governmental immunity, including the need to assure those entering public service that they will only incur liability for truly egregious acts in the performance of their discretionary governmental functions. Wilson, 138 F. Supp. 2d 1126, 1132–33) (citing Kierstyn v. Racine Unified School Dist., 228 Wis. 2d 81, 596 N.W.2d 417, 422 (1999)). It is significant that the exception only exists for acts that are malicious, in addition to being willful and intentional. "Malice" in the legal sense connotes "wrongful intention," as in "[t]he intent, without justification or excuse, to commit a wrongful act." Black's Law Dictionary (7th Ed.1999) 968 (emphasis added). "Reckless disregard of the law or of a person's legal rights" can also constitute malice. Id. Lastly, malice can mean "ill will" or "wickedness of heart." Id. The evidence in the record fails to demonstrate that any of Officer Kraemer's actions on March 14, 2016 were done with malice or reckless disregard for the Plaintiff's legal rights. Officer Kramer perceived the Plaintiff as a safety threat and acted in accordance with that perception. The discretionary actions of Officer Kraemer were not were not performed maliciously, thus she is entitled to immunity from the Plaintiffs' state law claims.

Finally, Plaintiff asserts only an indemnity claim against the Village of Brown Deer, which is therefore entitled to summary judgment as well.

## CONCLUSION

Defendants respectfully request that the Court grant them summary judgment dismissing Plaintiff's claims.

Dated at Wauwatosa, Wisconsin this 16th day of December, 2019.

>GUNTA LAW OFFICES, S.C.
>Attorneys for Defendants Village of Brown Deer and Devon M. Kraemer
>
>By: /s/ Ann C. Wirth
>Gregg J. Gunta, WI Bar No. 1004322
>Ann C. Wirth, WI Bar No. 1002469
>John A. Wolfgang, WI Bar No. 1045325
>Jasmyne M. Baynard, WI Bar No. 1099898
>9898 W. Bluemound Road, Suite 2
>Wauwatosa, Wisconsin 53226
>T: (414) 291-7979 / F: (414) 291-7960
>Emails: gjg@guntalaw.com
>acw@guntalaw.com
>jaw@guntalaw.com
>jmb@guntalaw.com